# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

M.M., a minor, by her mother and next
friend, SHARON MATTHEWS, et al.

**Plaintiffs,**

v.

**GOVERNMENT OF THE DISTRICT
OF COLUMBIA, et al.,**

**Defendants.**

Civil Action 07-02316  (HHK)

## MEMORANDUM OPINION

M.M., a minor, and her mother, bring this action against the District of Columbia and

Michelle Rhee, chancellor of the District of Columbia Public Schools ("DCPS"), in her official

capacity, alleging violations of the Individuals with Disabilities Education Act ("IDEA").

Plaintiffs allege that the District of Columbia denied M.M. the free appropriate public education

("FAPE") guaranteed by the IDEA by:  (1) failing to provide M.M. with appropriate special

education and related services; (2) failing to complete appropriate evaluations of M.M.; (3)

failing to provide M.M. with an appropriate placement and failing to afford her parent an

opportunity to participate in a placement meeting; and (4) failing to provide M.M. with an

appropriate individual education plan ("IEP").  Plaintiffs further allege that an administrative

hearing officer erred when he dismissed M.M.'s case and when he determined that she was not

the prevailing party.[1]

---

[1] On May 5, 2008, the court granted defendants' motion for partial dismissal of the
complaint, dismissing claims brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and the
Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*

Plaintiffs and defendants have filed cross-motions for summary judgment [##12, 15]. Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that defendants' motion for summary judgment should be granted, and plaintiffs' motion for summary judgment should be denied.

## I.  BACKGROUND

**A.**     **Statutory Background**

Congress enacted the IDEA to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education."  20 U.S.C. § 1400(d)(1)(A).  To receive funding under the IDEA, States and the District of Columbia must ensure that "[a]ll children with disabilities residing in the State . . . and who are in need of special education and related services, are identified, located, and evaluated."  34 C.F.R. § 300.111(a)(1)(i).  The IDEA's FAPE provision entitles each disabled student to an IEP and educational services tailored to the unique needs of that student.  *See* 20 U.S.C. § 1414(d)(2)(A) ("At the beginning of each school year, each [State] shall have in effect, for each child with a disability in [its] jurisdiction, an individualized education program"); 34 C.F.R. § 300.323(a).

Parents who disagree with the school's provision of a FAPE to their child may request an administrative hearing before an impartial hearing officer.  20 U.S.C. § 1415(f)(1)(a).  A decision made by a hearing officer "shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education."  *Id*. § 1415(f)(3)(E).  The hearing officer's determination may be challenged in federal district court by an "aggrieved" party.  *Id*. § 1415(i)(2).

2

B.      **Factual Background**

M.M. is an eleven year-old student who is learning disabled and eligible for special education.  During the 2006-2007 school year she was enrolled at Thomas Elementary School in the District of Columbia.  In September 2006, Dr. Kara Covington of the Children's National Medical Center completed a psycho-educational evaluation of M.M.  The evaluation indicated that M.M. is functioning with overall low-average math skills and low reading and written language skills.  It found that results reported by M.M.'s teacher were consistent with a diagnosis of Attention-Deficit/Hyperactivity Disorder ("ADHD"), however it concluded that it was not clear whether M.M.'s symptoms reflected a biologically-based disorder or had developed in response to her struggles in learning.  The evaluation recommended that M.M. would benefit from a small, supportive, structured class environment with a low student-teacher ratio designed to meet the needs of students with disabilities.  Further, it found that M.M. required a high degree of structure, support, and positive feedback to be successful.

In December 2006, a Multi-Disciplinary Team ("MDT") meeting was held to update M.M.'s IEP.  Both parties agree that the December 2006 IEP provided M.M. with fifteen hours of specialized instruction per week.  Plaintiffs state that M.M.'s mother requested occupational and speech therapy evaluations, as well as clinical evaluations be performed, and that DCPS agreed to complete the occupational therapy evaluation.  Plaintiffs also state that M.M.'s mother generally disagreed with M.M.'s IEP and placement.

Later that month, plaintiffs filed a due process complaint alleging that DCPS violated the IDEA in a number of ways including failure to evaluate M.M., failure to develop an appropriate IEP, and failure to provide appropriate services and placement.  A hearing was convened on

February 9, 2007, and concluded on April 9, 2007.  On April 26, 2007, Hearing Officer Terry

Michael Banks dismissed plaintiffs' complaint with prejudice.  The complaint was largely based

on the September psycho-educational evaluation, and Hearing Officer Banks found that there was

no evidence in the record that plaintiffs had provided this evaluation to DCPS.  In addition, while

Hearing Officer Banks concluded that plaintiffs had failed to prove that DCPS had failed to

evaluate M.M. in all areas of suspected disability, he ordered DCPS to convene a MDT meeting

to determine the need for further evaluations and to develop a student evaluation plan.

In June 2007, DCPS convened a MDT meeting, which included M.M.'s mother.  At that

meeting, the team reviewed the 2006 psycho-educational evaluation.  Based on the evaluation

and testimony from M.M.'s mother, educational advocate, speech pathologist and classroom

teacher, the MDT determined that M.M. should be evaluated in speech/language and

occupational therapy, but did not warrant a psychiatric evaluation.  In July 2007, just one month

after the MDT meeting and before any evaluations had been conducted, plaintiffs filed another

due process complaint alleging that DCPS failed to provide an appropriate placement, develop an

appropriate IEP or provide appropriate services for the 2005-2006 and 2006-2007 school years,

failed to evaluate M.M. in all areas of suspected disability, and failed to provide compensatory

education.

A due process hearing was held in September 2007 before Hearing Officer Banks.  At

that hearing, Dr. Covington testified, and repeated many of the findings and recommendations

that she made in her September 2006 assessment, stating that M.M. should be in a small

supportive classroom and that she should have occupational therapy and speech/language

evaluations.  Dr. Covington also testified that over the two years that she had seen M.M., M.M.

had not made significant progress and that if M.M. were receiving a greater amount of services, should would probably make more progress.  David Clark, admissions director for the High Road School, also testified at the hearing that the High Road School could provide M.M. with educational benefit.  DCPS argued that plaintiffs' claims, because they arose before the April 2007 decision dismissing plaintiffs' complaint with prejudice, were precluded by *res judicata*, but did not introduce any evidence or put on any witnesses at the hearing.

On September 21, 2007, Hearing Officer Banks released his decision.  Hearing Officer Banks noted that the parties stipulated that claims arising before the April 2007 decision were barred.  He then found that plaintiffs failed to meet their burden of showing that DCPS took any action or refused to take any action that violated the IDEA between April 2007 and July 2007, when plaintiffs filed their second due process complaint, because it was not a violation to fail to complete the evaluations and convene another MDT meeting within thirty days.  Nevertheless, he ordered DCPS to provide M.M. with occupational therapy and speech/language evaluations by October 5, 2007, and to convene a MDT meeting within fifteen days of delivering the evaluations to review all current evaluations, develop an IEP and discuss placement alternatives.  It is this decision that is under review.

## II.  ANALYSIS

### A.  Standard of Review

When reviewing a hearing officer's determination in an IDEA case, a district court shall review the administrative record, hear additional evidence presented at the request of the parties, and, based "on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).  In reviewing the determination, the district court

must give the hearing officer's ruling "due weight." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982) (holding that this provision "carries with it the implied requirement that due weight shall be given to [the administrative] proceedings"). The "due weight" standard of review does not rise to the level of *de novo* review, but "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Id.*  Instead, the court initially presumes that the hearing officer was correct and the party challenging the hearing officer's determination bears "the burden of persuading the court that the hearing officer was wrong." *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988). Thus, while the standard employed by the district court to review the hearing officer's determination is "less deferential than that applied under the traditional substantial evidence test used in ordinary administrative review cases," *Scorah v. District of Columbia*, 322 F. Supp. 2d 12, 18 (D.D.C. 2004), provided that the basis for the officer's conclusion is clear and supported by "sufficiently reasoned, specific findings," the hearing officer's determination should not be upset. *Kerkam v. Superintendent, D.C. Pub. Sch.*, 931 F.2d 84, 87-88 (D.C. Cir. 1991).

**B.     Scope**

Defendants argue that this court may not address any of plaintiffs' allegations relating to periods before April 26, 2007, the date of the first hearing officer determination ("HOD"), because the parties stipulated that such allegations would not be heard at the second hearing and plaintiffs may only challenge the second HOD issued in September 2007.  Any attempt by plaintiffs to have the court review the April 2007 HOD, defendants argue, is barred by plaintiffs' failure to timely file an appeal of the April 2007 HOD.  While plaintiffs assert "ongoing

violations" based on DCPS failing to provide M.M. with a FAPE for over two years, plaintiffs

appear to agree that the second HOD was limited to occurrences after April 26, 2007.  *See* Pl.'s

Opp. at 7; *see also* Tr. at 13 (responding to the hearing officer's statement that claims preceding

the April HOD were *res judicata*, plaintiffs' attorney stated, "Exactly . . . but from that moment

forward, DCPS had an obligation to complete evaluations . . .").

 In the September 2007 HOD, Hearing Officer Banks stated that "[t]he parties stipulated

that claims arising prior to April 26, 2007 were barred from relitigation by *res judicata*."  AR 4.

He then concluded that "Petitioner has failed to meet her burden of proving that DCPS took any

action or declined to take any action that violated [IDEA] between April 26, 2007, when the

previous HOD was issued, and July 5, 2007, when the *Complaint* was filed."  AR 7.  Neither

party has challenged Hearing Officer Bank's statement of their stipulation.  Therefore, the court

finds that Hearing Officer Banks appropriately limited his review to claims arising after the April

2007 HOD.

**C. DCPS Did Not Take Any Actions that Violated the IDEA between April 26 and July 5, 2007.**

 Plaintiffs' claims thus boil down to the question of whether the hearing officer erred in

determining that M.M. was not denied a FAPE when at the June 5, 2007 MDT, DCPS (1)

decided to evaluate her only in occupational therapy and speech/language and (2) did not change

her IEP, services or placement.

   *1. Evaluations*

 The IDEA requires that students be "assessed in all areas of suspected disability."  20

U.S.C. § 1414(b)(3)(B).  Plaintiffs argue that DCPS failed to evaluate M.M. in all areas of

suspected disability because it determined not to conduct a psychiatric evaluation to determine if

she has ADHD, asserting that the September 2006 psycho-educational evaluation so

recommended.  DCPS rejoins that the psycho-educational evaluation did not recommend an

immediate psychiatric evaluation and instead recommended that "[i]f her attentional issues

persist, once appropriate school interventions have been put in place, then an evaluation by a

child psychiatrist or developmental pediatrician is warranted."  *See* AR 61.  While Hearing

Officer Banks did not explain his conclusion that DCPS did not violate the IDEA by failing to

conduct a psychiatric evaluation, the court finds that DCPS's decision not to conduct a

psychiatric evaluation at the June 2007 MDT is supported by the record.

### 2. *IEP, Placement, and Services*

A state provides a student with a FAPE when it "provid[es] personalized instruction with

sufficient support services to permit the child to benefit educationally from that instruction."

*Rowley*, 458 U.S. at 203.  A court's inquiry must consider whether the IEP developed through the

Act's procedures is reasonably calculated to enable the student to receive educational benefits.

*Id*. at 206-07.  The statute focuses primarily on the "*procedures* which would result in

individualized consideration and instruction for each child," *id*. at 189, and no particular

substantive outcome is guaranteed, *id*. at 192.  Moreover, "proof that loving parents can craft a

better program than the state offers does not, alone, entitle them to prevail under the Act."

*McKenzie*, 862 F.2d at 886.

Here, pointing to Dr. Covington's testimony, plaintiffs argue that M.M. failed to make

any progress in two years under her IEP and therefore she has not received a FAPE.   The court

notes, however, that while an IEP need be reasonably calculated to enable the student to receive

educational benefits when it is created, the IDEA does not guarantee any substantive outcome. Instead, the substantive outcome, namely that M.M. failed to make any progress in two years, shows that DCPS needed to take steps to reevaluate M.M. and consider what services and placement were necessary to ensure that she received a FAPE.  The question before the court is whether DCPS violated the IDEA by not taking all of those steps before July 5, 2007 when plaintiffs filed their complaint.  The court concludes that plaintiffs' challenge was premature.

The IDEA guarantees a FAPE through a series of procedures designed to ensure that students with disabilities are properly evaluated and reevaluated, *see* 20 U.S.C. § 1414(a)-(c), that those teachers and other educational staff who know the student best or specialize in students with learning disabilities meet to develop an appropriate individual education plan for the student, *see id.* § 1414(d), and that such evaluations and plans are updated periodically, *see id*. §§ 1414(a)(2) & (d)(4).

In this case, at the June 2007 MDT meeting, the DCPS agreed to conduct further evaluations of M.M. in occupational therapy and speech/language.  The IDEA mandates that an IEP be based on the results of the most recent evaluation of a student.  *Id.* § 1414(d)(3)(A)(iii). Therefore, it makes sense that DCPS would not have updated M.M.'s IEP, including determining whether she required additional services or a different placement, at the June 2007 MDT meeting.  This appears to be what Hearing Officer Banks concluded when he found that plaintiffs had offered no showing of any act or omission by DCPS that would constitute a violation of the IDEA between April and July 2007 and instead ordered DCPS to complete the evaluations by October 2007 and shortly thereafter convene a MDT meeting to review the evaluations, develop an IEP and discuss placement alternatives.  "[A]sking the Court to intervene when the state

public school system is putting together a plan of action would seem to put the cart before the horse." *LeSesne ex rel. B.F. v. District of Columbia*, 2005 WL 3276205, at *7 n.5 (D.D.C. July 26, 2005).  The court finds no error in the HOD and therefore concludes that summary judgement is appropriate for defendants.

**D.    The Hearing Officer Did Not Err in Dismissing Plaintiffs' Complaint and There Was No Prevailing Party.**

Having determined that the hearing officer did not err in determining that DCPS did not violate the IDEA, the court concludes that the hearing officer properly dismissed plaintiffs' complaint.  Under the IDEA, a prevailing party may be awarded attorneys' fees by a federal court.  20 U.S.C. § 1415(i)(3)(B).  The essential test for prevailing party status is whether a party successfully obtains a "material alteration in the legal relationship of the parties" with the imprimatur of an adjudication.  *Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001).  A plaintiff is deemed to have prevailed at the administrative level where the HOD awarded plaintiff "relief on the merits," such as an order "to undertake or refrain from some conduct consistent with [the IDEA]." *Abraham v. District of Columbia*, 338 F. Supp. 2d 113, 120 n.8 (D.D.C. 2004).  Here, DCPS had already agreed to conduct the evaluations ordered by the hearing officer and so the only relief plaintiffs received was a deadline for those evaluations.  This falls far short of the relief plaintiffs requested. Therefore, the court concludes that plaintiffs did not receive relief on the merits and were not the prevailing party.

### III.  CONCLUSION

For the foregoing reasons, the court concludes that defendants' motion for summary judgment should be granted and plaintiffs' motion for summary judgment should be denied.  An appropriate order accompanies this memorandum opinion.


Henry H. Kennedy, Jr.
United States District Judge